**No. 26-2515**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

United States of America

Plaintiff-Appellee

v.

Juan Manuel Rios-Martinez

Defendant-Appellant

On appeal from the United States District Court
for the District of Idaho
No. 25-cr-00135-DCN
Honorable David C. Nye

**Fed. R. App. P. 9(a) Memorandum**
**Defendant-Appellant Juan Manuel Rios-Martinez**

Hannah Pugh
Federal Defender Services of Idaho
702 West Idaho, Suite 1000
Boise, ID 83702
(208) 331-5500
Hannah_Pugh@fd.org
Attorney for Juan Rios-Martinez

## TABLE OF CONTENTS


INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 3

BACKGROUND ........ 4

STANDARD OF REVIEW ........ 7

ARGUMENT ........ 8

I. The district court erred in concluding that a detention hearing was authorized ........ 8

A. Detention hearings require a threshold showing of serious risk of flight. ........ 8

B. The government did not show a serious risk of flight. ........ 10

1. Incentive to flee ........ 11

2. Ability to flee ........ 13

3. Community Ties ........ 14

4. Reliability and trustworthiness ........ 15

5. Totality ........ 17

II. The district court did not apply the legal standard for ordering detention. ........ 19

A. The district court applied the wrong standard. ........ 19

B. Under the proper standard, § 3142(g), release is required. ........ 20

CONCLUSION ........ 22

## TABLE OF AUTHORITIES

### Cases

*Gilman v. Schwarzenegger*, 638 F.3d 1101 (9th Cir. 2011) .................... 20

*Stack v. Boyle*, 342 U.S. 1 (1951) ........................................................... 3

*United States v. Chavez-Rivas*, 536 F. Supp. 2d 962 (E.D. Wis. 2008) .. 18

*United States v. Chen*, 820 F. Supp. 1205 (N.D. Cal. 1992) ................... 22

*United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584 (E.D. Ky. 2023) ... 9

*United States v. Cruz*, 363 F. Supp. 2d 40 (D.P.R. 2005) ....................... 22

*United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131 (D. Idaho 2023) ........................................................................................ passim

*United States v. Friedman*, 837 F.2d 48 (2d Cir. 1988) .................... 10, 11

*United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991) ................. 8, 13, 19

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc) ....... 20

*United States v. Hir*, 517 F.3d 1081 (9th Cir 2008) ........................... 7, 20

*United States v. Molina-Orantes*, 798 F. Supp. 3d 1204 (D. Or. 2025) .. 13

*United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) ........... passim

*United States v. Muñoz-Correa*, 2023 WL 5672203 (D. Utah Sept. 1, 2023) ........................................................................................ 9, 18

*United States v. Pavon-Andino*, 2025 WL 446143 (D. Colo. Feb. 10, 2025) ........................................................................................ 9, 16

*United States v. Romero-Martinez*, 2024 WL 965150 (D. Conn. Mar. 6, 2024) ................................................................... 9, 11, 16, 18

*United States v. Salerno*, 481 U.S. 739 (1987) ...................................... 1, 8

*United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015) ...... 7, 9, 13

*United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990) ...................... 21

*United States v. White*, 2021 WL 2155441 (M.D. Tenn. May 27, 2021) ... 9

**Statutes**

18 U.S.C. § 3142 .......... passim
18 U.S.C. § 3145 .......... 3
18 U.S.C. § 3231 .......... 3
28 U.S.C. § 1291 .......... 3
8 U.S.C. § 1326 .......... 1, 3, 12

**Rules**

Cir. R. 27(d)(2)(A) .......... 24
Fed. R. App. P. 32 .......... 24
Fed. R. App. P. 32(f) .......... 24
Fed. R. App. P. 4(b)(1)(A)(i) .......... 3

# INTRODUCTION

Juan Manuel Rios-Martinez is a 59-year-old widower charged with illegal reentry in violation of 8 U.S.C. § 1326. He has lived in Idaho for 20 years, spends time with his citizen son and granddaughter most weekends, and has appeared for 13 of his 14 prior criminal cases. He faces a sentencing guideline range of about four to ten months. He is indigent. The government does not claim he is dangerous.

Despite all those facts favoring release, the district court ordered him detained pretrial. Its analysis treated pretrial detention as the default, rather than "the carefully limited exception" it should be under the Bail Reform Act (BRA). *United States v. Salerno*, 481 U.S. 739, 755 (1987). This Court should reverse the detention order for two independent reasons.

*First*, the government failed to make the § 3142(f)(2)(A) threshold showing required for the district court to hold a detention hearing. The BRA requires concrete evidence of a serious risk of intentional flight. The government did not produce it. Instead, the district court reached its (f)(2)(A) finding by inverting the correct analysis. It relied on the wrong statutory maximum penalty rather than the lower guideline range that

the parties agreed applied. It treated factors as neutral when the government produced no evidence, weighed Mr. Rios-Martinez's ties to Mexico without weighing his ties to Idaho, and treated his returns to this country as evidence he would flee from it. Without the threshold showing, a detention hearing is not authorized, and no statutory basis for detention exists.

*Second*, even if a detention hearing was authorized, the district court never applied the standard that governs detention. It detained Mr. Rios-Martinez on the (f)(2)(A) threshold finding alone, without ever making the further finding § 3142(g) requires—that no condition or combination of conditions could reasonably assure his appearance. This Court must reverse a detention order that rests on the wrong legal standard.

## Statement of Jurisdiction

*District Court Jurisdiction*. A grand jury in the District of Idaho indicted Mr. Rios-Martinez on one count of illegal reentry following deportation, in violation of 8 U.S.C. § 1326(a). D.C. Dkt. 2. The district court has jurisdiction over the case under 18 U.S.C. § 3231, and to rule on issues relating to the detention order under 18 U.S.C. §§ 3142 and 3145.

*Appellate Court Jurisdiction*. The district court's detention order is an immediately appealable order. *Stack v. Boyle*, 342 U.S. 1, 6 (1951). This Court has jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291.

*Timeliness of Appeal*. The district court affirmed the magistrate judge's detention order on April 9, 2026. D.C. Dkt. 30. Mr. Rios-Martinez timely filed his notice of appeal fourteen days later. D.C. Dkt. 32; Fed. R. App. P. 4(b)(1)(A)(i).

*Custody Status*. Mr. Rios-Martinez is currently detained pending trial in Jerome, Idaho, at Jerome County Jail, a U.S. Marshals Service contract facility.

## BACKGROUND

An Idaho grand jury indicted Mr. Rios-Martinez on this reentry charge in May 2025. D.C. Dkt. 2. Nine months later, a magistrate judge ordered him detained pending trial after a contested detention hearing. D.C. Dkt. 18. He moved to revoke the detention order, arguing that he was neither a risk of flight or danger to the community, and in April 2026 the district court denied the motion. D.C. Dkt. 30. He now appeals.

Mr. Rios-Martinez is a 59-year-old widower. Before his arrest, he lived near Nampa, Idaho, where his United States citizen son, daughter-in-law, and granddaughter also live. D.C. Dkt. 24 at 19. He enjoyed seeing them on the weekend. In the six years before this arrest, Mr. Rios-Martinez worked at the same address for the same employer: CCC Show Horses in New Plymouth, Idaho. D.C. Dkt. 16. He owns two cars and holds an Idaho driver's license. D.C. Dkt. 24 at 13.

Mr. Rios-Martinez first came to the United States about 45 years ago. D.C. Dkt. 24 at 13. He has lived in Idaho for the past two decades. *Id.* He has attempted to obtain legal status. D.C. Dkt. 24 at 13–14. Early on, those efforts were successful: in 2001 a Petition for Alien Relative (I-130) was approved for him, and in 2002 he received an Employment

Authorization Document (I-765). From there he obtained a Social Security number and began paying taxes. D.C. Dkt. 24 at 13. The work permit has since expired.

Mr. Rios-Martinez continued to pursue legal status through an attorney. The attorney later withdrew without notifying him, because they had lost contact. D.C. Dkt. 24 at 14; D.C. Dkt. 23 at 9. As a result of losing his representation, Mr. Rios-Martinez missed his next immigration hearing and was ordered removed. *Id.* He has not been able to afford another attorney to reopen the case. He has been removed to Mexico three times and voluntarily left once. Each time, he returned. His most recent return resulted in the charge in this case: one count of illegal reentry under 8 U.S.C. § 1326.

Mr. Rios-Martinez has some misdemeanor criminal history. D.C. Dkt. 23 at 9–11. Within the past decade, his convictions are all driving-related. *Id.* Throughout his life, he has responded to criminal charges with maturity and accountability. *Id.* Mr. Rios-Martinez has appeared in 13 of his 14 prior criminal cases. *Id.* The lone missed appearance was a misdemeanor summons about 15 years ago; he resolved the warrant,

completed probation without violations, and has had no failures to appear in any criminal court since. *Id.*

If released, Mr. Rios-Martinez would live with his citizen son, daughter-in-law, and granddaughter at their home in Nampa. D.C. Dkt. 24 at 13. There are no firearms in the residence, no dangerous dogs, and no household members on probation or parole. D.C. Dkt. 16. Mr. Rios-Martinez has agreed to location monitoring, curfew, travel restriction to the District of Idaho, surrender of any travel documents, and any other condition imposed by Pretrial Services. D.C. Dkt. 23 at 15.

## STANDARD OF REVIEW

This Court reviews a pretrial detention order de novo on the legal questions and for clear error on the underlying findings of fact. *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). Whether the district court identified and applied the correct legal standard and whether the record justifies the detention order are legal questions decided without deference. *United States v. Hir*, 517 F.3d 1081, 1086–87 (9th Cir 2008).

The Fifth and Eighth Amendments' protections against deprivation of liberty without due process and excessive bail "require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). This Court therefore makes "an independent examination of the facts, the findings, and the record" to determine whether detention is consistent with the defendant's "constitutional and statutory rights." *Id.* at 1405–06.

# Argument

## I. The district court erred in concluding that a detention hearing was authorized.

### A. Detention hearings require a threshold showing of serious risk of flight.

The Bail Reform Act starts with a presumption against detention. A court may order pretrial detention only after a detention hearing, which is authorized only when one of the conditions in § 3142(f) is met. Detention is therefore a "carefully limited exception." *Salerno*, 481 U.S. at 755. In a close case, "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405. At every stage, the government bears the burden. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

The § 3142(f) conditions are narrow. Subsection (f)(1) authorizes a detention hearing only when the government charges certain crimes. Reentry under § 1326 is not one of them. Instead, the government here invoked § 3142(f)(2)(A), which authorizes a detention hearing only on a showing, by a preponderance of the evidence, of a "serious risk" that the defendant "will flee."

This Court has not defined "serious risk of flight" under (f)(2)(A). District courts that have addressed the question have converged on the same reading: a "serious risk" of flight means "a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision."[1] *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023); *accord United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021); *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584 (E.D. Ky. 2023); *United States v. Muñoz-Correa*, 2023 WL 5672203 (D. Utah Sept. 1, 2023); *United States v. Romero-Martinez*, 2024 WL 965150 (D. Conn. Mar. 6, 2024); *United States v. Pavon-Andino*, 2025 WL 446143 (D. Colo. Feb. 10, 2025).

To meet this burden, the government must produce "concrete information," not "mere conclusory allegations." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138; *see also United States v. Friedman*, 837 F.2d 48, 49 (2d

[1] Three considerations are categorically excluded from the (f)(2)(A) inquiry: dangerousness, *Figueroa-Alvarez*, 681 F. Supp. 3d at 1136; the prospect of immigration detention or removal if the defendant is released, *Santos-Flores*, 794 F.3d at 1092; and the availability of release conditions, which is reserved for the § 3142(g) hearing, *White*, 2021 WL 2155441, at *14.

Cir. 1988). District courts assess the showing through four categories of factors: incentives to flee, ability to flee, ties to the jurisdiction and the United States, and reliability and trustworthiness of the defendant. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140 (citing *Santos-Flores*, 794 F.3d at 1092). The inquiry is one of totality, with no single factor dispositive. *Id.*

The government must produce evidence for each factor it relies on. The principle that no single factor is dispositive does not allow a court to treat a factor on which the government produced no evidence as "neutral," because doing so effectively shifts the burden to the defendant. Where the government produces no evidence on a factor, the factor weighs against detention.

If the government fails to make this threshold showing of serious risk of flight, then no detention hearing is authorized, and the defendant must be released. 18 U.S.C. § 3142(a)–(b).

**B. The government did not show a serious risk of flight.**

In Mr. Rios-Martinez's case, the four threshold factors cut against serious risk of flight. The district court errored with every factor. It relied on the wrong statutory maximum penalty and did not consider the much

lower guideline range that the parties agreed Mr. Rios-Martinez faced. It treated factors on which the government produced no evidence as neutral. It weighed Mr. Rios-Martinez's ties to Mexico but not his ties to Idaho. And it treated his repeated returns to the United States—which *Figueroa-Alvarez* says show "firm resolve to reside in this country"—as evidence he would flee from it. 681 F. Supp. 3d. at 1144. Each factor is addressed below, followed by the totality.

**1. Incentive to flee**

The district court found that Mr. Rios-Martinez has an incentive to flee because of the strength of the evidence against him and the 20-year statutory maximum under § 1326. D.C. Dkt. 30 at 6. Neither supports the conclusion.

The weight of evidence is the least persuasive consideration within the (f)(2)(A) incentive analysis. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141 (citing *Motamedi*, 767 F.2d at 1408). Strong evidence of guilt is typical in § 1326 prosecutions. *Id.* And it cannot carry a flight finding alone, even when paired with a potentially long sentence. *Friedman*, 837 F.2d at 50; *Romero-Martinez*, 2024 WL 965150, at *5–6.

The potential sentence district court relied on in this case was simply wrong. It cited a 20-year statutory maximum. D.C. Dkt. 30 at 6. That is incorrect. The actual statutory maximum for Mr. Rios-Martinez is far less: two years. 8 U.S.C. § 1326(a). He does not qualify for the increased statutory maximum penalties under § 1326(b).

Moreover, the statutory maximum does not reflect Mr. Rios-Martinez's actual sentencing exposure. Section 1326 imposes no mandatory minimum. 8 U.S.C. § 1326(a), (b). The district court itself recognized that "the guideline range in this case is likely lower." D.C. Dkt. 30 at 6 n.1. The government acknowledged that Mr. Rios-Martinez's "effective guideline sentence is approximately 4-10 months in jail absent acceptance of responsibility." D.C. Dkt. 25 at 6. With acceptance, the range drops to 1 to 7 months, and § 3553(a) factors could reduce it further. What matters for incentive to flee in a reentry case is the Guidelines exposure, not the statutory ceiling. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141. A defendant looking at months—possibly time served—is not the "alien defendant facing sentences measured in years" that *Figueroa-Alvarez* identified as having a "far greater incentive to flee." *Id.*

If anything, Mr. Rios-Martinez has an affirmative incentive to stay. His immigration case remains unadjudicated on the merits and he missed his last hearing only because his attorney withdrew without notifying him. Flight would foreclose his only path to lawful status in the country where he has lived for 45 years.

**2. Ability to flee**

The district court did not find that the government had shown ability to flee. It acknowledged that "the record contains inadequate information regarding [Mr. Rios-Martinez]'s finances" and set the factor aside because "no single factor is dispositive." D.C. Dkt. 30 at 8. That was error.

The government bears the burden on this factor, as on every other. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1146; *Gebro*, 948 F.2d at 1121. *Santos-Flores*'s rule that no single factor is dispositive, 794 F.3d at 1092, does not allow a court to treat a factor on which the government produced no evidence as neutral. Doing so effectively shifts the burden to the defendant.

To establish ability to flee, the government must show "access to significant financial resources that would enable [] flight," *United States v. Molina-Orantes*, 798 F. Supp. 3d 1204, 1220–21 (D. Or. 2025), or access

to fraudulent identity documents that would allow a defendant "to flee undetected" under a different name, *Figueroa-Alvarez*, 681 F. Supp. 3d at 1144. Here, the government pointed to the fact that Mr. Rios-Martinez recently worked, that he owns two cars, and that he has a driver's license. D.C. Dkt. 25 at 6. That is not enough for ability to flee. The government provided no figures showing what Mr. Rios-Martinez earned, what he saved, or what either car is worth. The government did not provide evidence of an international travel document. It did not allege that others could support his flight. To the contrary, Mr. Rios-Martinez was found indigent at his first appearance and qualified for appointed counsel. A defendant who cannot afford an attorney does not have "significant financial resources." *Figueroa-Alvarez*, 681 F. Supp 3d. at 1147. His driver's license was issued in his real name and conceals nothing. And it is not Real ID compliant, so it cannot be used to board a flight.

On this record, the factor weighs against the government, not for it.

### 3. Community Ties

The district court found that Mr. Rios-Martinez has "strong family connections in both Idaho and Mexico" but treated only the Mexico connections as relevant, concluding that they indicated he "could flee." D.C.

Dkt. 30 at 8. The court did not weigh the Idaho connections at all. That selective analysis was error. Properly considered, the factor compares foreign ties to domestic ties. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1142.

Mr. Rios-Martinez's domestic ties dominate the comparison. His son, daughter-in-law, and granddaughter are United States citizens who live in nearby Nampa, Idaho. He sees them most weekends. Citizen family—"especially children"—is "particularly compelling" in weighing against serious risk of flight. *Id.* at 1143.

Beyond family, Mr. Rios-Martinez came to this country 45 years ago and has lived in Idaho for the past 20. He worked at the same address for the same employer for the most recent six years, until his arrest. He has an Idaho driver's license, a Social Security number, and a record of paying taxes. Multiple siblings live in this district. *See* D.C. Dkt. 16; D.C. Dkt. 21 at 3–7. The district court weighed none of this.

Weighed properly, the factor cuts against a finding of serious risk of flight. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1147.

#### 4. Reliability and trustworthiness

The district court found that Mr. Rios-Martinez "struggles with reliability and trustworthiness" based on his "multiple illegal reentries"

and "history of other criminal activity," which the court said "are predictive of a serious risk of flight." D.C. Dkt. 30 at 7. It rejected Mr. Rios-Martinez's argument that his repeated returns reflect a desire to stay because the argument "ignores his flagrant disregard for the law" and "he could flee in violation of pretrial release but still remain in the United States." *Id.* That analysis misapplies the factor.

Multiple reentries are "only modest proof of serious risk of flight." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1144. They show "disregard for court orders and the criminal law," but they "simultaneously demonstrate . . . [a] strong desire to remain in the United States." *Id.* The "very act of illegally reentering the United States—knowing that reentry subjects the alien defendant to a potential prison term and certain deportation thereafter—demonstrates a firm resolve to reside in this country, especially when done multiple times." *Id.* Other courts agree. *See Pavon-Andino*, 2025 WL 446143, at *3; *Romero-Martinez*, 2024 WL 965150, at *5.

The district court's framing reverses the analysis. If "disregard for the law" inherent in reentry overrides "firm resolve to reside in this country," every § 1326 defendant is, by definition, a serious flight risk, flagged

for detention by the very act that brought him to court. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1144. That undermines the pretrial detention structure that Congress created in the BRA when it exempted such immigration-related offenses from presumptive detention. Simply put, coming back is not evidence of fleeing.

Nor does Mr. Rios-Martinez's broader criminal history predict flight. All his convictions are misdemeanors, and his convictions in the past decade are all driving-related. His conduct in those cases shows reliability in the face of criminal charges. Across 14 criminal cases, Mr. Rios-Martinez appeared 13 times. The lone exception was a misdemeanor summons 15 years ago; he resolved the summons and completed probation without violations. He also appeared and resolved a 1991 California felony hit-and-run charge that carried two to four years in prison—more time in custody than he faces here. This factor cuts against serious risk of flight.

**5. Totality**

Each factor weighs against serious risk of flight. Mr. Rios-Martinez has no serious incentive to flee given his actual sentence exposure and his unadjudicated immigration case. The government produced no

evidence of his ability to flee. His ties to the jurisdiction are substantial, including his citizen son and granddaughter that *Figueroa-Alvarez* identifies as "particularly compelling." 681 F. Supp. 3d at 1143. And his record of appearing in 13 of 14 criminal cases establishes reliability.

The (f)(2)(A) standard requires "a great risk — beyond average" of intentional flight. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138. This record falls well short. That conclusion is consistent with every district court to consider similar facts. *See, e.g.*, *Figueroa-Alvarez*, 681 F. Supp. 3d at 1148; *Muñoz-Correa*, 2023 WL 5672203, at *3; *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 968–69 (E.D. Wis. 2008); *Romero-Martinez*, 2024 WL 965150, at *4–7.

Because the government failed to make the threshold showing, no detention hearing was authorized—and no statutory authority for detention exists. The Bail Reform Act requires release on personal recognizance or an unsecured appearance bond unless one of the § 3142(f) conditions is met, with appropriate conditions imposed under § 3142(c) where necessary. 18 U.S.C. § 3142(a)–(c). The proper disposition here is reversal and remand with instructions to release Mr. Rios-Martinez on appropriate conditions under § 3142(c).

## II. The district court did not apply the legal standard for ordering detention.

Even if a detention hearing was authorized, the district court did not apply the standard that governs that hearing. It treated its (f)(2)(A) finding of serious risk of flight as sufficient to order Mr. Rios-Martinez detained. That is not the test for detention, and applying the wrong test is reversible on its own. Applying the right test, § 3142(g), the government cannot meet its burden.

### A. The district court applied the wrong standard.

At a detention hearing, the question is whether "no condition or combination of conditions will reasonably assure" the defendant's appearance in court.[2] 18 U.S.C. § 3142(e). The government bears the burden of showing by a preponderance that no such conditions exist. *Gebro*, 948 F.2d at 1121. The court analyzes that question through the four § 3142(g) factors.

[2]Detention may also be ordered on dangerousness grounds, when the government shows by clear and convincing evidence that no conditions can reasonably assure the safety of others or the community. 18 U.S.C. § 3142(e); *Motamedi*, 767 F.2d at 1406. The government below conceded it is not seeking detention on dangerousness grounds. Dkt. 25 at 3 n.1. Only the likelihood of appearance ground is at issue.

The district court did not apply that standard. Instead, it ordered Mr. Rios-Martinez detained based on its finding that "the Government met its burden and proved by a preponderance of evidence that Rios-Martinez poses a serious risk of flight." D.C. Dkt. 30 at 8. That is the (f)(2)(A) threshold standard, not the (g) detention standard. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1136–37. A finding of serious risk of flight authorizes a detention hearing; detention itself requires a further finding under (g) that no conditions can reasonably assure appearance. The district court never made that finding.

Applying the wrong legal standard requires reversal. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc); *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1105–06 (9th Cir. 2011). That principle has particular force here, where this Court reviews legal conclusions de novo and owes the district court no deference. *Hir*, 517 F.3d at 1086–87.

### B. Under the proper standard, § 3142(g), release is required.

The government cannot meet its burden for detention because the (g) factors weigh against detention, the conditions Mr. Rios-Martinez proposes reasonably assure his appearance, and the government has produced no concrete evidence to the contrary.

The nature and circumstances of the offense weigh against detention. Reentry under § 1326 is non-violent, not listed in § 3142(f)(1), and carries no presumption of detention. The weight of the evidence is "the least important of the various factors" under (g), *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990), and Mr. Rios-Martinez retains the presumption of innocence, *Motamedi*, 767 F.2d at 1407.

Mr. Rios-Martinez's history and characteristics, under § 3142(g)(3)(A), weigh strongly against detention. He has been in Idaho for two decades and most recently held the same job for six years. He has citizen family members nearby and sees them often. He holds an Idaho driver's license, a Social Security number, and has paid taxes. He has only been convicted of misdemeanor offenses. In the past decade, his misdemeanors have all been driving-related. With that criminal history, he appeared for court in 13 out of 14 cases, including a felony charge that carried a longer sentence than he faces here. He has no current substance-abuse issues and resolved a drinking problem decades ago.

Mr. Rios-Martinez proposes release on conditions that reasonably assure his appearance. He would reside with his U.S. citizen son, daughter-in-law, and granddaughter in Nampa—a third-party custodial

residence with no firearms, no dangerous dogs, and no household members on probation or parole. He has agreed to location monitoring, curfew, travel restriction to the District of Idaho, surrender of any travel documents, and any other condition imposed by Pretrial Services.

The Bail Reform Act does not require an "ironclad guarantee" that Mr. Rios-Martinez will appear; it requires "reasonable assurance." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). Mr. Rios-Martinez has provided reasonable assurances. On the other side of the aisle, the government must produce "concrete information," not speculation or "conclusory allegations." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138; *United States v. Cruz*, 363 F. Supp. 2d 40, 47 (D.P.R. 2005). The government has produced nothing about Mr. Rios-Martinez's proposed conditions. It has not shown that location monitoring is insufficient, that the third-party custodial residence is inadequate, or that curfew and travel restriction would not assure appearance. On this record, the government cannot meet its burden.

## CONCLUSION

This Court should reverse the district court's detention order and remand with instructions to release Mr. Rios-Martinez subject to reasonable conditions.

Date: May 7, 2026.

s/ Hannah Pugh
Hannah Pugh
Assistant Federal Defender
Federal Defender Services of Idaho
Attorney for Juan Rios-Martinez

## Certificate of Compliance

I am the attorney. **This brief contains 4086 words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

This brief complies with the 5200-word limit of Cir. R. 27(d)(2)(A).

Date: May 7, 2026.

s/ Hannah Pugh
Hannah Pugh
Assistant Federal Defender
Federal Defender Services of Idaho
Attorney for Juan Rios-Martinez

## Certificate of Service

I certify that, on date, I electronically filed this brief with the Clerk of Court of the United States Court of Appeals for the Ninth Circuit, and all parties will receive electronic service.

Date: May 7, 2026.

s/ Sybil Davis
Sybil Davis
Federal Defender Services of Idaho
702 West Idaho, Suite 1000
Boise, ID 83702
(208) 331-5500
Sybil_Davis@fd.org