UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>vs.<br><br>JUAN RIOS-MARTINEZ,<br><br>Defendant.<br><br>. . . . . . . . . . . . . . . . | Case No. 25-CR-00135-DCN<br><br>Boise, Idaho<br>February 23, 2026<br>2:50 p.m. to 3:28 p.m. |

VOLUME I OF I
DETENTION HEARING
BEFORE THE HONORABLE DEBORA K. GRASHAM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | MR. SEAN MAZOROL<br>United States Attorney's Office<br>1290 W. Myrtle Street, Suite 500<br>Boise, Idaho 83702 |
| For the Defendant: | MR. JOHN CACHERIS<br>Federal Defenders of Idaho<br>702 W. Idaho Street, Suite 1000<br>Boise, Idaho 83702 |
| Interpreter: | SUSAN EVANS |
| COURT RECORDER: | TRANSCRIPTION BY: |
| AMY TATE<br>U.S. District Court | TAMARA A. WEBER, CSR<br>P.O. Box 387<br>Caldwell, Idaho 83606 |

Proceedings recorded by electronic recording. Transcript produced by transcription service.

# I N D E X


| | PAGE | LINE |
|---|---|---|
| GOVERNMENT'S PROFFER | 4 | 7 |
| DEFENDANT'S PROFFER | 4 | 22 |
| GOVERNMENT'S ARGUMENT | 5 | 21 |
| DEFENDANT'S ARGUMENT | 8 | 4 |
| RULING | 16 | 3 |


# E X H I B I T S


| GOVERNMENT'S EXHIBITS: | PAGE | LINE |
|---|---|---|
| GE 1 - Immigration Order Admitted | 4 | 17 |
| GE 2 - Credential Acknowledgment Form Admitted | 4 | 17 |
| GE 3 - Case Information Admitted | 4 | 17 |

DEFENDANT'S EXHIBITS:

| | | |
|---|---|---|
| DE 1 - SSN Application Admitted | 5 | 18 |
| DE 2 - Immigration Order Admitted | 5 | 18 |
| DE 3 - Support Letter Admitted | 5 | 18 |

(Recording begins.)

CLERK: -- session. The Honorable Debora K. Grasham presiding.

COURT: Please be seated.

CLERK: The Court will now hear the case of the United States of America versus Juan Manuel Rios-Martinez, Case No. CR25-135-S-DCN.

Counsel, please state your appearances for the record.

MR. MAZOROL: Good afternoon, Your Honor. Sean Mazorol on behalf of the United States.

MR. CACHERIS: Good afternoon, Your Honor. John Cacheris on behalf of Mr. Rios-Martinez.

COURT: All right. Good afternoon, counsel. Good afternoon, Mr. Rios-Martinez.

All right. Sir, this is the time set for the detention hearing in this matter. Before I get going, the Court does recognize Susan Evans, the court-certified interpreter, who has appeared many times in this court.

It is my intention that these proceedings be as understandable to the defendant as if they were conducted in Spanish. Therefore, I will instruct the interpreter to make a word-for-word translation of these proceedings and to stop the proceedings if anyone speaks too quickly and the interpreter cannot keep up with the translation.

All right. Mr. Rios-Martinez, this proceeding today,

the purpose of this will be for the government to demonstrate either by clear and convincing evidence that you pose a danger to the safety of any other person or the community or by a preponderance of the evidence that you pose a risk of flight.

Since the burden is with the government, I will start first with Mr. Mazorol to hear any proffer.

MR. MAZOROL: Your Honor, we'll proffer the three exhibits that I sent in this morning and then, additionally, the brief that was prior filed last week. Those are the only two proffers that I have.

COURT: All right. Mr. Cacheris, have you had an opportunity to review the exhibits from the government?

MR. CACHERIS: I have, Your Honor. No objection.

COURT: All right. Those three exhibits from the government will be admitted and, Mr. Mazorol, I have in fact reviewed the government's briefing in this matter.

(Government Exhibit Nos. 1 through 3 admitted.)

COURT: Okay. Anything else on the proffer? That's it?

MR. MAZOROL: That's it, Your Honor.

COURT: Mr. Cacheris, I'll turn to you, sir.

MR. CACHERIS: Thank you, Your Honor. I would just submit at this point as evidence the brief I obviously previously filed this morning. I hope the Court had a chance to review that. I tried to get it out as soon as I could.

There's -- in addition, I've got three exhibits. I provided a copy of those exhibits to Mr. Mazorol as well as the Court. Exhibit 1 is in connection with documents relating to Social Security Number. Exhibit 2 is related to the immigration hearing where he missed a court date in connection -- or with respect to his attorney withdrawal. And then Exhibit 3 is a support letter from his son.

I'd like to move those into evidence as additional proffer, Your Honor. I would just note that he does own two cars as far as some assets that he does have here. That's all I have, Your Honor.

COURT: Mr. Mazorol, have you seen the three exhibits from the defendant?

MR. MAZOROL: Yes, I have. And no objection.

COURT: Okay. The defendant's three exhibits will also be admitted. And Mr. Cacheris, I did have an opportunity this morning to review Docket 14 which is your motion for release.

(Defendant's Exhibit Nos. 1 through 3 admitted.)

COURT: All right. And I have reviewed all of that. So Mr. Mazorol, I'll turn to you for argument then.

MR. MAZOROL: Thank you, Your Honor. My argument is largely a rehash of the argument I made last week with a few minor additional points.

Your Honor, the three exhibits I submitted, the first being the failure to appear in immigration court in 2017. After

that failure to appear, you can see that he was ordered removed. He was in fact removed in 2019 and then he was found on the border a couple more times within the following months and again deported.

Then the following year in October of 2020, he was back in the United States and applied for a driver's license through the Idaho Transportation Department. As part of that, he submitted a form stating that he was a citizen of the United States. And at the bottom of that form, it also notes that he was declaring under penalty of perjury that all the information was true and correct.

The other exhibit, Your Honor, that I've submitted, Exhibit 3, was the conviction for disturbing of the peace in 2011. The reason why I submitted that, Your Honor, is that you'll notice that there was a failure to appear in that case.

So, Your Honor, the nature and circumstances of the offense is obvious. He's not allowed to be in the United States but here he is again in the United States after having been deported multiple times. The weight of the evidence is strong. It does not appear that he has any lawful status in the United States yet, again, he is here in the United States.

The characteristics of the defendant are, one, that, although the defendant appears to have ties to the community, his son, a grandchild, it does not appear that he has been following court orders or warnings about returning to the United

States for many years.

I know he has a criminal history prior to 2011 and Your Honor noted that at the last hearing. But at least just looking at the 2011, he has a failure to appear in court. It appears the immigration proceedings start shortly there afterwards and you'll note on that docket that part of the conditions was he was warned not to return to the United States unlawfully.

And then in 2017, he fails to appear for immigration proceedings. He's deported. Immediately tries to reenter the United States on two separate occasions and then he's back in the United States lying about his status and so -- going so far as to say he's a United States citizen.

All that's to say, Your Honor, I don't think he is someone who can follow court orders if released from custody.

In the last factor, Your Honor, there's not a lot that he's a danger to the community other than he continues to disobey the law in terms of driving largely without privileges and being cited for lack of insurance. That's all I have, Your Honor.

COURT: So is the government's argument related to danger or the risk of flight?

MR. MAZOROL: Excuse me, Your Honor. Risk of flight. It is risk of flight. Sorry. My apologies.

COURT: Okay, okay.

MR. MAZOROL: Monday afternoon but, yes, risk of

flight.

COURT: Okay. Thank you.

All right. Mr. Cacheris.

MR. CACHERIS: Thank you, Your Honor. So I would posit to the Court that of course even if the Court does find he's a risk of flight, the central question is whether there are conditions of release that will reasonably assure his appearance.

On that, I believe the case law spells out that we go back again to look at the 3142 factors, primarily nature and circumstances of the offense, weight of the evidence, history and characteristics of the defendant. There's a few subsets of characteristics the Court -- or factors the Court is supposed to consider. That is supervised release violations, if any; the number or multitude of unlawful entries, if any; prior failures to appear, if any, and the use of fraudulent identification documents. And then lastly, would his release pose a danger to anyone. I'll walk through these right now if the Court's okay with that.

First is the nature and circumstances of the offense. Your Honor, this is a status offense. No shooting, no beating, no robbing, no guns, no drugs, no violence. It's just a status offense. It is still an offense, still a federal crime, undoubtedly, but it is not as serious as the Court has seen in other cases where other individuals have been released.

Secondly, weight of the evidence. We know that's the least important factor.

As it relates to his immigration status, I wanted to note to the Court that from my review of his A file, turning to Exhibit No. 2, I'm looking first of all at page 2. I'd note that there's a notice of hearing and removal proceedings. That notice is dated October 13, 2015, and he's given a court date about over a year, year and a half later on April 4, 2017.

Page 1, however, shows that in April in 2015, his lawyer had already withdrawn which I think is something for the Court to at least consider in that he has -- at least by my review of his A file, when he came back in 2019, he did reassert a claim for asylum.

But circling back to these documents, Exhibit 2, what we do have before the Court is I understand it's because he missed this court date of course that case was not -- his hearing did not move forward but we have an unadjudicated claim for asylum. That I would say to the Court goes to the potential of weight of the evidence. It is not necessarily as strong as we do see in some other cases. Not dispositive. Of course this is not an immigration court but it's just a factor I would tender the Court to consider.

History and characteristics, Your Honor. He has absolutely no felony convictions. Supervised release violations? Zero. Failures to appear. I confessedly went

through or followed what I saw through the Pretrial Services Report and was not aware that he had a failure to appear. I do not dispute the document that Mr. Mazorol pointed out, that it looks like in 2011, he did miss a court date. But a few things to note about that, Your Honor.

First, that was 15 years ago. We have a history of him showing up, appearing in court, resolving matters, accepting responsibility where appropriate. A very, very strong track record. Maybe not sterling but brass. So we do have a great history overall since that one failure to appear.

Notably, when I look at that failure to appear, it looks like he missed his court date on a summons. He then came back after they initially filed a warrant for his arrest. He was arrested, came back, then got an attorney and what we see is he did not miss any court after that.

So how or why did he miss that other court date? I don't know but people do miss court for a number of reasons. Could they have gotten his address wrong? I don't know. I can't speculate other than to say I think there's a question as to whether or not it was intentional. Given his track record of court appearances before and after, I think the supposition could be made that it was unintentional.

So what we have is that somebody who has been appearing and returning -- appearing for court and resolving his court matters including this one failure to appear that we have over

the time period of 35 or 40 years or so he has been in the U.S. off and on.

I would note that Mr. Mazorol appropriately pointed out he has had several deportations. First thing to note is I -- my recollection of Ms. Figaro Alvaro's (phonetic) case that was found in favor of the defense where the defendant was released, that individual had about four deportations and was not deemed a serious risk of flight. Of course that's not dispositive. That's just one factor for the Court to consider.

And the other thing is that as I've argued and then I've seen some language in the courts discussing this is the fact that he keeps returning and leaving Mexico. I would argue to the Court that it's actually Mexico that should be upset as far as him potentially not appearing for anything in Mexico because he keeps coming back here to appear and deal with -- to appear and he's handled or shown up for his criminal court hearings. He does want to be here and he's clearly shown that by his actions.

The next factor. What about fraudulent identification documents? Here, the government has pointed out on an exhibit that there's an entry where it says, "Are you a U.S. citizen or national?" And the form says the answer was yes. A couple things we do know is that language is a possible barrier -- potential barrier for him. We do have an interpreter in the court. I don't know what he felt or what he knew when he was

answering that form.

I would note as an aside that him having a driver's license, and he did have one in California, enabled him to get insurance to protect the public. Again, one small factor for the Court to consider.

As far as his -- as I noted with respect to his missing this immigration court, I've already pointed it out as it relates to his immigration attorney withdrawing and it looks like the notice was mailed to him at least at one address that was listed but he doesn't live there anymore. Did he live there at the time? I don't know.

The next aspect for me to point out to the Court as it relates to fraudulent identification documents, here's where I go back to Exhibit 1 which I submitted just drawing the Court's attention. This is an application for original Social Security Number card. It's got his name, Juan Manuel Rios, and it says his place of birth is in Mexico, that he is foreign-born.

Nevertheless, as suggested on the pay stub which is on page 2 of Exhibit 1 and the W-2 of the third page of Exhibit 1, he was paying taxes. Federal withholding, Social Security, taxes, Medicare withholding and disability as required in California.

COURT: Mr. Cacheris, on this point -- and, again, I am not an immigration expert but I see that this was -- so he had a Social Security card in 2001 according to Exhibit 1. My

understanding is that immigrants were allowed to get Social Security cards if they have authorization to work from the Department of Homeland Security. So it looks like in 2001, he got that authorization because he was able to get a card.

Since that time though, he was deported several times. He wasn't even authorized to be in the United States. So is it your position that that Social Security card is still valid and lawful under these circumstances?

MR. CACHERIS: I'm not a Social Security lawyer, Your Honor. I did disability work a long time ago in a prior lawyer life. All I can say is that my review of the A file, he was filing taxes for a number of years. According to my client, he was filing taxes within the last handful of years. I can't corroborate that because I don't have the records and I can't -- I can't say that.

But my understanding with respect to this issue because I've reached out to immigration attorneys on this is that -- which I provided a CFR cite is he is allowed to have a Social Security Number. And according to CFR, he's allowed to do that if he, one, has work authorization and/or, number two, if he wants to apply and receive some sort of aspect of federal benefits and/or if a state requires it.

I'm not aware of Idaho requiring that or allowing that but I don't know if California did. But the point is is that I'm not aware of anything at least in the A file and, candidly,

I skimmed it, whether or not they have rescinded his Social Security Number but it is something -- a point of identification. The federal government he is registered with essentially and has shown that he wants to be here and has tried to comply with the laws at least at this aspect of it.

We don't often see this in these immigration cases. I would just -- at least I have not seen it, Your Honor. I apologize. I did not mean to presume what the Court has seen or not seen but this is very highly unusual. In handling cases since I've been here for the past four years in Idaho in this district, this is probably only the second or third client in a 1326 case that has actually taken a step to get a Social Security Number and actually go forward and actually file income taxes.

Next aspect, Your Honor, is the punishment. My review of the case law is in addition to the statutory considerations as the Court of course should factor into is what are the guidelines he is facing. In this case, my -- my back of the envelope math on this, he is facing 4 to 10 months which is one of the lowest categories appropriate under the federal guidelines and this is without consideration of the 3553 factors.

As I pointed out in my brief, Your Honor, when he has faced more difficult -- or excuse me, he's faced higher punishment in that California case, he showed up for court. He

didn't flee. He didn't run. He didn't hide. He showed up for court.

Here he is. He's faced with a case -- with a deportation case. He wants to be here. He wants to be released so he can continue to fight his immigration case, his immigration status. And lastly, Your Honor, with respect to does he have -- are there conditions of release that will reasonably assure -- not ironclad guarantee, but reasonably assure his appearance in court.

He's shown he wants to be here. He keeps coming back here. He has family here. More specifically and most pointedly, he has a son that is here, an American-born son, as well as a grandchild and a daughter-in-law. They have agreed to allow him to stay there. He does have a driver's license despite the issues as appropriately identified by the government and he has assets here.

We would contend that the Court can certainly put him on a curfew, could certainly impose ankle monitoring in addition to other confinement's and given his strong track record of following court orders each and every time except for one instance as it relates to his criminal court, there are certain conditions -- there are conditions that will reasonably assure his appearance in this particular matter, Your Honor. That's all I have.

COURT: All right. Thank you, Mr. Cacheris. Mr.

Mazorol, anything else?

MR. MAZOROL: No. Thank you, Your Honor.

COURT: All right. So Mr. Rios-Martinez, as I said at the outset, it is the government's burden to demonstrate -- in this instance, we're not arguing danger. So really, the government's burden is to demonstrate by a preponderance of the evidence that you pose a risk of flight.

And so the way the Court answers that question is to walk through four statutory factors. I'm going to walk through each of those now. The first factor asks the Court to look at the nature and the circumstances of the offense that's been charged. Here, sir, you're charged with one count of deported alien found in the United States.

Now, this is not the type of crime that is automatically entitled to a detention hearing. That's why we had that little hearing before today to see if we even get here. So this is not the type of crime that normally is entitled to detention.

In terms of the circumstance of the offense charged, the government argues that you are a citizen of Mexico who has repeatedly entered the United States without authorization and you've been removed or deported on four separate occasions and told not to return without authorization and they contend that you have failed to follow those orders each time, returning without authorization as demonstrated by your presence here

today. That is -- that's the government's case against you on those charges. But again, these are not the kind of charges normally entitled to detention.

Looking at the second factor, it looks at the weight of the evidence. Now here, sir, I have very limited information about you because it's early in this case. You have very good counsel. He's going to make arguments as you move through this case up with the district court and you get additional information.

What I know right now or at least I've been presented with is a couple of things. First, the grand jury met, considered your case and determined there was probable cause that you violated the law that you've been alleged to have violated, being a deported alien found in the U.S. and that is because they issued the Indictment. That's probable cause. That's a fairly low burden in the criminal context.

What else do I have? Well, I have strong evidence as proffered by the government specifically related to your criminal history and your previous removals or deportations from the United States and your contact with Homeland Security or ICE in those removals.

That combined with the government's proffer that you have misrepresented yourself as being a citizen of the United States gives this Court great pause and it is -- it is just part of the weight of the evidence but, again, this is not a crime

normally entitled to detention. So just those two factors do not weigh in favor of detention.

The third factor the Court looks at is the history and character of the person. Specifically you, sir. What is your character, your physical and mental condition, your family ties, your employment, your financial resources, length of residence in the community, your community ties, your past conduct, your history related to drug or alcohol abuse, your criminal history and any records concerning court appearances. And it's a way for the Court to look at what you have done in the past that might give this Court an indication as to what you would do in the future if I were to release you.

And so here, sir, I have a lot of information that's been proffered. I understand you're about 59 years old. You were born in Mexico. You have -- your mother and six brothers are still in Mexico. You have three brothers that are here in Idaho. You were married for a period of time but, unfortunately, your wife has passed away.

You have one adult son who is married. They have a child, your granddaughter. They all live in Nampa and they're all U.S. citizens. And they agree to have you live with them if you were to be released here today.

I understand that you have been in Idaho for some period of time now, maybe up to 20 years. Your criminal history reflects that you've been in and out of the United States since

at least 1991. That's when your first criminal history is reported in California. The last six years I understand you've been at the same address in New Plymouth. I don't have really any information related to your education. I don't have any information about your passport status or your willingness to surrender one if you have one. I understand that you were employed with CCC Show Horses, that you previously also worked as a landscaper.

I understand your counsel has made an argument about having a Social Security card and I see documents that you applied for that as early as 2001 and that you in fact paid taxes at least back in that time period.

The government has proffered information, again, as it relates to your Idaho driver's license that you represented falsely that you were a citizen of the United States. That is concerning by making those representations to obtain government identification.

In terms of your health, I understand that you have an undiagnosed or some kind of lung issue but we don't have a specific diagnosis. Substance abuse, you claim to not have any history but you do have a criminal history related to alcohol and some charges related to that.

Now, I've been referring to your criminal history and if you were just here on charges of deported alien found in the United States, I wouldn't be as concerned if there wasn't the

fact that you have a significant and consistent criminal history that begins in 1991.

So in 1991, you're in California and, given what the government argues now, you were here unlawfully because you had deportation proceedings instituted against you in 1992. And while you're here unlawfully, you have a DUI that started with two felony charges. It was pled down to a misdemeanor. You got jail time and probation.

And what did you do while you were out on release? So the Court released you pending charges. It looks likes you committed new crimes and one of them incurred the day before your sentencing. So what did you do in the past that would give the Court an indication what you do in the future? Here, you were released on serious charges, told not to commit another crime while you were on release and you committed a new crime just before your sentencing.

As I said, you faced your first deportation proceedings beginning in 1992 where you were voluntarily returned to Mexico and it looks like shortly thereafter, you returned without authorization because you had immediate charges a few months later in California again. In 1992, you faced misdemeanor burglary charges as well as false identification to peace officers which were later dismissed. You faced jail time on that.

Then you faced your second DUI charge in 1993. You get

a misdemeanor and you're also driving while your license was suspended. You were charged with hit and run property damage which indicates there was an accident. Those were later dismissed and you faced jail time and again probation.

And while you're on probation, it looks like you committed a new crime again. You were released by a court and told to follow the laws and you committed a new crime for which you were later convicted. You're not following court orders.

1994, you faced additional charges including disorderly conduct. While you were on release for that, you were charged with another new crime. Ultimately given probation. In 1997, you faced additional petit theft charges. I don't know what happened with that. I do know that in 2004, you were driving without a license and you were fined.

You faced additional driving related to charges in 2008 when you've come to Idaho. Those are now in Idaho, 2008. And you were given some jail time and probation for that. It looks like you went back and forth to California because in 2008, you have additional driving charges -- misdemeanor charges for which you were fined in California.

2011, it looks like you're back in Idaho and this is where you have a disturbing the peace and we have some information related to that. The government proffers that you have at least a failure to appear there. Again, you didn't show up for court when you were supposed to. You were ultimately

given jail time and again probation.

And shortly thereafter, you faced alien inadmissibility under Section 212 from ICE. There's a failure to appear in 2017 associated with that case, two failures to appear. There's a note here that you were ultimately removed in 2019.

But between those charges and your removal in 2019, you continued to get criminal charges. In 2013, you had a misdemeanor carry concealed weapon without a license. That was dismissed. 2014, you had a charge of malicious injury to property also dismissed. And then you had another driving related charge in 2015 for which you did get jail time and additional probation. 2016, a similar driving charge, jail time and probation.

2019, yet again a failure to provide proof of insurance which was a second or subsequent offense. That was dismissed and then we became -- we get a series of immigration proceedings.

In July of 2019, you were removed from the United States. As I said previously, the first thing that they tell you when you are removed is you're not to return to the United States without authorization. What did you do in response to that? Well, within a month or a little more than a month, you're back in the United States and facing the same charge. That means you entered the United States without authorization in violation of the court's order telling you not to do so.

The charge here says that in August of 2019, there was a prosecution declined and you were removed to Mexico for 20 years. What did you do after August 26? Well, as of September 3, 2019, you were back in the United States without authorization again. A consistent failure to follow court orders by coming to the United States.

Your counsel argues that shows that you want to be in the United States. I can tell you, sir, many people may want to be in the United States but you don't just get to come to the United States. You have to follow the laws. You have a number of occasions where you were specifically informed of this and removed and yet you've chose to ignore that and return. That is a history of failing to follow court orders that gives this Court very little confidence that you're going to follow any court order that I may impose.

And significantly, after this series of failing to follow court orders and returning without authorization, you've come back to the United States again because you're here and, in 2020, you applied for a government issued form of identification, an Idaho driver's license. And Government Exhibit 2 said that you falsely represented that you were a citizen of the United States in order to obtain that document. That is a significant factor for the Court to consider under these charges.

Now, again, the final factor the Court asks is whether

you are a danger to any other person in the community if you would be released. The government's not arguing danger so I don't find that to be particularly relevant to the Court's analysis here. I'm focused on whether or not you are a risk of flight.

I do find that the government has demonstrated by a preponderance of the evidence that you pose a risk of flight. The question then is are there any conditions of release that this Court can impose that would reasonably assure that you're actually going to show up to court as directed.

And here, sir, your counsel argues that you have family to stay with, that you may be able to work. You have some assets and you have a driver's license. That gives you the ability to show up. I'm not reasonably assured that you would actually show up given the charges that you face and your history of failing to follow court orders, including failures to appear both for an immigration proceeding and a criminal charge and, more specifically, returning to the United States repeatedly despite being told that you cannot do so without authorization.

So for all those reasons, the Court will find that you should remain detained pending further proceedings in this case.

Mr. Rios-Martinez, I understand that you've been here a long time, sir, but that does not excuse your failure to follow court orders or the laws of the United States. I walk through

each of those factors, sir, so that you understand what the factors are and the evidence as I have it currently in front of me.

Now, with that, Mr. Rios-Martinez, do you have any questions for the Court before we conclude today?

MR. RIOS-MARTINEZ: No.

COURT: All right. Counsel, anything further to take up? Mr. Mazorol?

MR. MAZOROL: No. Thank you, Your Honor.

COURT: Thank you. Mr. Cacheris?

MR. CACHERIS: No, Your Honor.

COURT: Ms. Tate, anything further?

CLERK: No, Your Honor. Thank you.

COURT: Ms. Evans, as always. Thank you for your assistance today.

INTERPRETER: You're welcome, Your Honor.

COURT: All right. With that, the Court will be in recess.

CLERK: All rise. The Court is adjourned.

(Proceedings concluded.)

I, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Tamara A. Weber ______ 3/10/26______

Signature of Approved Transcriber Date

Tamara A. Weber ______

Typed or Printed Name